Pearson, C. J.
 

 The bill seeks to recover a legacy given by the will of Drewry S. Morrow to the feme plaintiff, in these words: “ I give and bequeath to my sister-in-law, Susan L. Barham, for her sole, separate and exclusive use, excluding the
 
 jus mariti
 
 of her present or any future husband, the sum of one thousand dollars.'’
 

 On the argument three preliminary objections were made: 1st. The feme plaintiff must sue by next friend. This we think is well taken. As it now stands, the bill is that of the husband, and a decree will be no bar to another bill in the name of the wife by next friend, for the reason that the fund is secured to the separate use of the wife, and the husband is not at liberty to sue for and recover it as an ordinary legacy. 2d. The other pecuniary legatees are necessary parties, as the bill asks for an account of the estate. The other pecuniary legatees standing on the same footing ought to have been made parties, so as to bind them by the account, and subject them to a rateable abatement in the event of a deficiency of assets to pay all; but this objection is obviated by the admission of the answer, that the executors have an ample fund provided they are allowed time to collect the notes due to the intestate. 3d. The residuary legatees are necessary parties ordinarily in a suit for a pecuniary legacy. The residuary legatees are not necessary parties, but, under the peculiar circumstances of this case,
 
 *247
 
 we think they should be parties, for they are the persons directly interested in the question raised by the bill and answer: that is, whether the pecuniary legacies should be paid off in Confederate treasury notes, leaving' a rateable part for the residuary relatives; or should be paid in good money, leaving the Confederate treasury notes to fall into the residue ? The executors have no interest in this question, but are stake-holders, and the parties interested are not before the court. This objection is taken in the answer. Upon an intimation of this opinion by the court, the defendants consented that the bill should be amended so as to remove these objections, upon the payment of costs, as if the bill were dismissed, which terms were accepted and the case was then argued upon the main question.
 

 It was insisted by the plaintiff that
 
 “ one thousand dollars’’
 
 means that amount in specie: i. e., United States money, a currency recognized by the government of the United States as the representative of money, and that, “ so far as the court can see in this case, there has at no time been any other currency in this country than lawful money of the United States.”
 

 It was insisted for the defendants that, in putting a construction upon this will, which
 
 speaks
 
 in 18&4, the time of the death of the testator, the court is bound to take notice of the fact that at that time Confederate treasury notes constituted the currency of the State of North Carolina, and must take the testator to mean
 
 one thousand dollars in Confederate treasury notes.
 
 In aid of this construction the learned counsel relied upon these special facts: that is, the testator gives other pecuniary legacies amounting in all to $9,200; he had on hand at his death Confederate treasury notes to the amount of $8,800, and was indebted not exceeding $100; and by another clause of his will he gives “ all of my crop, stock, plantation tools, money and provisions on' hand, and debts due me at my death, after paying
 
 *248
 
 and satisfying the legacies and legatees hereinbefore mentioned, and all other property not hereinbefore mentioned, I give and bequeath to my nephews,” &c.
 

 These special facts do not aid in the construction one way or the other; for the obvious reply is, if he meant that the pecuniary legacies should be paid out of the Confedérate treasury notes on hand, the amounts being- nearly the same, why charge expressly his crop, stock, plantation tools and debts due to him ? So we have a general question of construction on the words “ one thousand dollars,” used by a testator who died domiciled in this State in 1864.
 

 It is a well settled rule of law that pecuniary legacies are to be paid in the currency of the country where the testator had his domicile, in the absence of anything to show a different meaning.
 
 Saunders
 
 v. Drake, 2 Atk. 404. The rule, nothing is a legal tender in payment of
 
 debts
 
 except gold and silver coin, does not apply to
 
 legacies.
 
 The courts are bound, in putting a construction upon wills and other instruments, to take notice of the facts, as a part of public history, that in 1864 our State was at war with the government of the United States, and that the people of North Carolina, in their ordinary conversation and business transactions, spoke and acted as if the State had separated from the Union, and that we did in fact use other currency than the lawful money of the United States; and it is manifest that, in order to arrive at the true meaning of words, we must take into consideration all of the circumstances which surround the man at the time he uses the words.
 

 If therefore the testator had died in 1861 or 1862, at a time when Confederate treasury notes were recognized and used as the representative of money, and were received in the payment of debts contracted before the war by creditors, sheriffs and collecting agents, so as to constitute a currency for the country, although somewhat depreciated, we would hold that the legacy could be satisfied by the payment of an
 
 *249
 
 amount equal to the value of one thousand dollars in Confederate treasury notes at the time of his death.
 

 But by the aid of the same knowledge, (of the public history of the times;) we know the fact that Confederate treasury notes had ceased to be a currency. No man would receive them in payment of debts contracted before the war; a sheriff or other collecting officer was not at liberty to take them in payment, and if he did so and made an acquittance he was liable for the full amount, without notice on the part of his principal not to receive such paper.
 
 Atkins
 
 v. Mooney, 1 Phil. 31. In short, Confederate paper had then ceased to be a currency, and was only used as a substitute when articles were rated at 10, 20 and 50 times their value
 
 in money.
 
 A country without a currency is an anomaly, but such was the fact. So we cannot entertain the idea for a moment that the testator, who Avas a man of very large estate and had no children, in giving these pecuniary legacies to his sister-in-law and other near relatives, meant to give them Confederate treasury notes, without supposing that he intended to mock them!
 

 The testator is careful to provide that this one thousand dollars, payable, as is said, in Confederate treasury notes, which would not buy
 
 more than ten barrels of
 
 flour, shall be
 
 “
 
 for her sole, separate and exclusive use, excluding
 
 the Jus mariti
 
 of her present or any future husband." This provision is absurd, unless he meant that the legacy should be paid in good money.
 

 The court declares its opinion to be that the plaintiff Mrs. Barham is entitled to one thousand, dollars in the currency of the United States. In consideration of the fact admitted by the answer, that the executors have paid over to the residuary legatees all of the stock, plantation tools, &c., re-taining only the notes due to the testator, upon which this legacy is charged, and which have been bearing interest,
 
 *250
 
 we think the plaintiff is entitled to interest on her legacy, to begin one year from the death of the testator, for the residuary legatees have no right to expect to be gainers by the delay in paying the legacy.
 

 There will be a reference to the Master to inquire whether the defendants, the executors, have collected, or by reasonable diligence might have collected, of the notes due the testator an amount sufficient to pay the plaintiff’s legacy with interest-; and the cause will stand for further directions.
 

 Per Curiam.
 

 Decree accordingly.